O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER MEZA, | ) | Case No. EDCV 23-01379 DDP (SHKx) |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER DENYING OFFICER DEFENDANTS'** |
| v. | ) | **MOTION TO DISMISS** |
| | ) | |
| DANIEL QUIDORT, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the court is Defendants Daniel Quidort and Trent Tunstall (collectively, the "Officer Defendants")'s Motion to Dismiss Plaintiff's Complaint. Having considered the submissions of the parties and heard oral argument, the court denies the motion and adopts the following Order.

**I. Background**

In 2016, Plaintiff Christopher Meza and the mother of his child, Defendant Tanya Karakesisoglu ("Karakesisoglu"), were engaged in a custody dispute. (Complaint ¶¶ 1, 18.) During the course of that dispute, Meza alleges that Karakesisoglu threatened to accuse him of rape if he did not agree to her custody demands. (Id.) On September 20, 2016, Karakesisoglu suggested that Meza

meet with her late at night at her office to discuss a matter pertaining to their son. (Id. ¶ 2.) Meza alleges that Karakesisoglu "pretended to be scared" for video cameras, then went to Meza's house with him and had consensual sex. (Id. ¶ 3.) Karakesisoglu then sent Meza text messages stating that she wanted to resume a romantic relationship with him. (Id. ¶ 4.) When Meza declined, Karakesisoglu reported to the Huntington Beach Police Department that Meza had kidnaped and raped her. (Id.) Meza was arrested shortly thereafter and charged with several felonies, including kidnaping, forcible oral copulation, and making criminal threats. (Id. ¶ 18; Defendants' Request for Judicial Notice, Ex. A.)

The Officer Defendants investigated Karakesisoglu's allegations against Meza. (Compl. ¶ 20.) Meza alleges that the Officer Defendants examined Karakesisoglu's phone and discovered exculpatory evidence, including search results and text messages about rape and kidnaping from September 19, the day before Meza met with Karakesisoglu. (Id.) Karakesisoglu allegedly also asked the Officer Defendants what effect the criminal charges against Meza would have on the custody dispute. (Id.) Nevertheless, Meza alleges, the Officer Defendants did not share any of this information with prosecutors, and prevented Meza from obtaining information from Karakesisoglu's phone. (Id. ¶ 21.)

Meza filed a motion in Orange County Superior Court seeking, among other things, all data gleaned from Karakesisoglu's phone. (RJN, Ex. B.) Meza argued that he was entitled to the phone information under Brady v. Maryland, 373 U.S. 83 (1973). (RJN, Ex. C). On December 8, 2017, the court denied Meza's motion, finding

2

"a limitation of consent on behalf of the victim," and that "disclosure of anything beyond that is a violation of her right to privacy."  (RJN, Ex. D at 11.)

On August 24, 2021, Meza was convicted of misdemeanor false imprisonment pursuant to California Penal Code § 237 after entering a People v. West plea.[1]  (Compl. ¶ 8;  RJN, Ex. D.)  As part of that plea, Meza admitted that he "willfully and unlawfully and knowingly violated the personal liberty" of a person with whom he was in a dating relationship.  (RJD, Ex. D at 3.)  All other charges against Meza were dismissed.  (Compl. ¶ 8.)

On July 23, 2023, Meza filed his Complaint in this Court, alleging a cause of action against Karakesisoglu for malicious prosecution and against the Officer Defendants for "Deliberate or Reckless Suppression of Evidence in Violation of the Fourteenth Amendment and 42 U.S.C. § 1983."  The Officer Defendants now move to dismiss the Section 1983 claim against them.

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."  Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

---

[1] The California Supreme Court has described a plea purusant to People v. West 3 Cal.3d 595 (1970) as "a plea of nolo contendere, not admitting a factual basis for the plea." In re Alvernaz, 2 Cal. 4th 924, 932 (1992).

3

Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Iqbal, 556 U.S. at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555-56. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

A. Heck bar

As an initial matter, Plaintiff's Section 1983 claim does not appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Guerrero v. Gates, 442 F.3d 697, 703 (9th Cir. 2006) ("Under Heck v. Humphrey, a [plaintiff] cannot recover damages in a § 1983 suit if a judgment in favor of the plaintiff 'would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated.'") (quoting Heck, 512 U.S. at 487.); see also Hunter v. Idaho, No. 1:19-CV-00113-DCN, 2020 WL 4340525, at *7 (D. Idaho July 28, 2020) (discussing applicability of Heck bar to non-prisoners).  The crux of Plaintiff's claim against the Officer Defendants here is that they withheld exculpatory evidence from prosecutors and from Plaintiff, including statements Karakesisoglu made to the Officer Defendants and, in particular, "exculpatory evidence that was on Ms. Karakesisoglu's phone," including text messages from Karakesisoglu to Plaintiff.  (Compl. ¶¶ 21, 23.)  In essence, Plaintiff contends that the Officer Defendants withheld Brady material.  See United States v. Hanna, 55 F.3d 1456, 1459 (9th Cir. 1995) ("Brady material is any evidence material either to guilt or punishment which is favorable to the accused, irrespective of the good faith or bad faith of the prosecution. . . . The Brady rule encompasses impeachment evidence as well as exculpatory evidence." (internal citations omitted)); see also United States v. Lucas, 841 F.3d 796, 807 (9th Cir. 2016) ("Under Brady, the government must disclose information favorable to the accused that is material either to guilt or to punishment.") (internal quotation marks omitted)).

Generally, "a Brady claim, when successful postconviction, necessarily yields evidence undermining a conviction: Brady evidence is, by definition, always favorable to the defendant and material to his guilt or punishment." Skinner v. Switzer, 562 U.S. 521, 536 (2011).  Although Plaintiff was never convicted of any felony charges, all of which were dismissed, he was convicted of misdemeanor false imprisonment after pleading no contest.  The question, then, is whether Plaintiff's Brady claim here "would

5

*necessarily* imply the invalidity of [that] conviction." <u>Lemos v. Cnty. of Sonoma</u>, 40 F.4th 1002, 1006 (9th Cir. 2022) (en banc) (emphasis original).  That question requires an analysis of "which acts formed the basis for the conviction." <u>Id.</u>  And where, as here, "the conviction is based on a guilty plea, we look at the record to see which acts form the basis for the plea." <u>Id.</u>  At this stage of proceedings, the record of the state court criminal proceedings is sparse.  Plaintiff has represented to the court, however, and Defendants do not appear to dispute, that the knowing violation of Karakesisoglu's personal liberty underlying the false imprisonment conviction involved an interaction between Plaintiff and Karakesisoglu in an elevator at her office, before Karakesisoglu went to Plaintiff's house.  (Compl. ¶ 3.)  Any <u>Brady</u> violations regarding Karakesisoglu's consent, or lack thereof, to sex that took place at Plaintiff's house would therefore be immaterial to the elevator interaction, which appears to have been videotaped, that took place at a different location earlier in the evening.  Accordingly, a successful <u>Brady</u> claim here would not necessarily imply that Plaintiff's false imprisonment conviction is invalid, and thus the <u>Heck</u> bar does not apply.

B. <u>Statute of Limitations</u>

The Officer Defendants argue that Plaintiff's suppression of evidence claim should be dismissed on statute of limitations grounds.  Generally, the statute of limitations for § 1983 cases brought in this district is two years. <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004).  And, in general, a claim accrues "when the plaintiff knows, or should know, of the injury which is the basis of the cause of action." <u>Fink v. Shedler</u>, 192 F.3d 911, 914

6

(9th Cir. 1999).  Accordingly, the Officer Defendants contend, Meza's suppression of evidence claim began to accrue in 2017 when he brought his Brady motion in state court, and therefore fell several years outside the statute of limitations when it was filed in 2023.

There are, however, exceptions to the general rule of claim accrual.  In Heck, for example, the Supreme Court held that a §1983 claim based upon "an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." 512 U.S. 477, 490 (1994); see also Trimble v. City of Santa Rosa, 49 F.3d 583, 585 (9th Cir. 1995).  More recently, the Supreme Court has clarified that, in situations analogous to malicious prosecution, similar principles apply even where a plaintiff has been acquitted.  McDonough v. Smith, 588 U.S. 109, 119 (2019).  In McDonough, the Court applied the "favorable termination" accrual rule to a plaintiff who, after being acquitted of a criminal charge, brought a §1983 claim based upon alleged fabrication of evidence.  Id. at 113.  Analogizing to common-law malicious prosecution claims, the Court explained that the delayed accrual rule "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." Id. at 116-18.

Here, the Officer Defendants assert that the standard two-year statute of limitations, and not the "favorable termination" accrual rule, applies because this is a suppression of evidence case rather than a fabrication of evidence case, and therefore McDonough is inapt.  (Reply at 9.)  This is a distinction without a difference.

7

As the Court explained in McDonough, the "accrual analysis begins with identifying the specific constitutional right alleged to have been infringed." Id. at 115. Although the Court assumed without deciding that a fabrication of evidence claim arises under the Due Process Clause, so too would a suppression of evidence claim. Comparing fabrication of evidence claims to malicious prosecution claims, the Supreme Court observed that "[a]t bottom, both claims challenge the integrity of criminal prosecutions undertaken 'pursuant to legal process.'" McDonough, 588 U.S. at 117 (quoting Heck, 512 U.S. at 484). The same is equally true of a suppression of evidence claim, and indeed, Plaintiff has also alleged a malicious prosecution claim against Karakesisoglu. Accordingly, the favorable termination rule, and not the more generally applicable two-year statute of limitations, applies to Plaintiff's § 1983 claim. Because that claim did not accrue until the felony charges against Plaintiff were dismissed in 2021, the claim was timely filed.

    C.   Collateral Estoppel

Plaintiff's Complaint alleges that the Officer Defendants obtained exculpatory information from Karakesisoglu's phone and then recklessly failed to turn that information over to prosecutors. (Compl. ¶¶ 22, 37.) In the underlying criminal proceeding, Plaintiff sought all data obtained from Karakesisoglu's phone, pursuant to Brady. (Request for Judicial Notice at 14.) The state court denied the motion. The minutes of the motion hearing state only that the "Court finds that a limitation of consent on behalf of the victim [sic]. Consent to disclosure of anything beyond that is a violation of her right to privacy." RJN

8

at 36. Here, the Officer Defendants contend that this denial of Plaintiff's Brady motion bars his current suppression of evidence claim under the doctrine of collateral estoppel. (Mot. at 10-11).

The doctrine of collateral estoppel bars re-litigation of an identical issue in a subsequent action when the issue was (1) actually litigated, (2) to a final judgment on the merits, (3) by or against the same party or its privies, after (4) a full and fair opportunity to litigate. Kendall v. VISA U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008); see also Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000). Of these, only the identity of issues is in dispute here. The Officer Defendants argue that the issues presented in the Brady motion and here are identical: whether the Officer Defendants were constitutionally obligated to turn over the data obtained from Karakesisoglu's phone.

Plaintiff's opposition is largely unresponsive to this argument, focusing instead on the nature of the relief sought rather than the issue being litigated. (Opp. at 14.) Nevertheless, on the current record, this Court cannot conclude that the issue actually decided by the state trial court was identical to that here. Although the state court ultimately did conclude that the prosecution was not obligated to produce the phone information to Meza, the court's sparse minutes provide little detail into its reasoning, particularly with respect to any Brady issues. The minutes, for example, give no indication whether the court ever decided whether the information sought qualified as Brady material in the first instance, whether or how the court balanced any Brady concerns against other interests weighing for or against production, or whether the court addressed the Officer

9

Defendants' roles in obtaining and sharing, or withholding, the phone data.[2]  Plaintiff is, therefore, not collaterally estopped from bring the suppression of evidence claim alleged here against the Officer Defendants.

   D.   Plaintiff's entitlement to Brady material

Lastly, the Officer Defendants, citing United States v. Ruiz, 536 U.S. 622 (2002), contend that Plaintiff's Section 1983 claim fails as a matter of law because Plaintiff was not entitled to Brady material unless and until he went to trial, and therefore the Officer Defendants were not required to disclose Brady material prior to Plaintiff entering his plea.  It is well-established in this circuit, however, that Brady applies even prior to the entry of a guilty plea.[3]  See, e.g., United States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process."); United States v. Lucas, 841 F.3d 796, 807 (9th Cir. 2016) (Evidence qualifies as Brady material if its production would "undermine confidence in the outcome of either the defendant's guily plea or trial." (internal quotation marks omitted)(emphasis added)); see also Smith v. Baldwin, 510 F.3d 1127, 1148 (9th Cir. 2007); United States v. Overton, 24 F.4th 870, 878 (2d Cir.), cert. denied, 143 S. Ct. 155, 214 L. Ed. 2d 51 (2022).  Indeed, otherwise, "prosecutors may be tempted to

---

[2] Although Plaintiff's Complaint here alleges that the Officer Defendants shared only limited data with prosecutors (Compl. ¶ 6), his Brady motion sought, and suggested that prosecutors were in possession of, "the fully imaged phone."  RJN at 11.

[3] For this reason, the Officer Defendants are not entitled to qualified immunity.

10

deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995).

Courts, including the Ninth Circuit, have hewed to this principle even post-Ruiz.[4] See, e.g., Parker v. Cnty. of Riverside, 78 F.4th 1109, 1113 (9th Cir. 2023); United States v. Delemus, 828 F. App'x 380, 381 (9th Cir. 2020) (unpublished disposition); Overton, 24 F.4th at 878; United States v. Sheikh, No. 2:18-CR-00119-WBS, 2020 WL 2940868, at *2 (E.D. Cal. June 3, 2020). The Officer Defendants were not free to ignore their Brady obligations simply because Plaintiff had not yet gone to trial. See Tennison v. City & Cnty. of San Francisco, 570 F.3d 1078, 1087 (9th Cir. 2009) ("Brady suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'") (quoting Youngblood v. West Virginia, 547 U.S. 867, 869–70, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006) (per curiam))); Gantt v. City of Los Angeles, 717 F.3d 702, 709 (9th Cir. 2013) ("We have held in no uncertain terms that Brady's requirement to disclose material exculpatory and impeachment evidence to the defense applies equally to prosecutors and police officers."); Poulos, 2022 WL 17072884, at *9 ("The duty

---

[4] Not all courts have followed this approach. See Poulos v. City of Los Angeles, No. CV 19-496-MWF (AFMX), 2022 WL 17072884, at *6 (C.D. Cal. Sept. 30, 2022) (collecting cases). But, as the Poulos court explained, "a rule disclaiming any duty of investigators to disclose exculpatory information already in their possession prior to a plea deal would pose far too great a risk that investigators might withhold exculpatory information from prosecutors as part of an attempt to elicit guilty pleas from potentially innocent individuals." Id. At *9. The idea that, consistent with such a rule, a defendant could be forced to go to trial on the basis of evidence that investigators knew to be fabricated would eviscerate Brady.

11

to disclose exculpatory evidence to prosecutors is not only inherent in any investigator's job responsibilities, but it is central to achieving the very objective of the Due Process Clause, which seeks to ensure that a miscarriage of justice does not occur — a risk that this case demonstrates exists not just for trial convictions but also for guilty pleas.") (internal quotation marks omitted).

**IV. Conclusion**

For the reasons stated above, the Officer Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: September 10, 2024

_____
DEAN D. PREGERSON
UNITED STATES DISTRICT JUDGE

12