O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTOPHER MEZA,

Plaintiff,

v.

DANIEL QUIDORT et al,

Defendants.

Case No.: 5:23-cv-01379-MEMF-SHK

**ORDER GRANTING MOTION FOR LEAVE TO FILE LATE ANTI-SLAPP MOTION, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, DENYING ANTI-SLAPP MOTION, GRANTING REQUEST FOR JUDICIAL NOTICE, AND DENYING MOTION TO STAY DISCOVERY AS MOOT [DKT. NOS. 58, 59, 62-6, 72]**

Before the Court are a Motion for Leave to File Late Anti-SLAPP Motion, Dkt. No. 58 ("Motion for Leave"), and a combined Motion for Judgment on the Pleadings and Anti-SLAPP Motion, Dkt. No. 59 ("MJOP" and "Anti-SLAPP Motion"), filed by Defendant Tanya Karakesisoglu, as well as a Request for Judicial Notice Filed by Christopher Meza, 62-6 ("RJN"). For the reasons stated herein, the Court hereby GRANTS the Motion for Leave, GRANTS the MJOP, DENIES the Anti-SLAPP Motion, and GRANTS the RJN.

Having dismissed the only claim against Defendant Karakesisoglu, the Court DENIES AS MOOT her Motion to Stay Discovery, Dkt. No. 72.

/ / /

1

I.    **Background**

A.  **Factual Background**[1]

Plaintiff Christopher Meza and Defendant Tanya Karakesisoglu were engaged in a custody dispute. Dkt. No. 1 ("Compl.") ¶ 1.

In the summer of 2016, while discussing the dispute, the Karakesisoglu said to Meza: "You'd better agree to whatever I want (full custody) because I can ruin your life anytime I want. I can accuse you of rape and the police will always believe me." *Id.* Meza didn't agree to Karakesisoglu's custody demands, and two weeks later Karakesisoglu went to the police and accused Meza of rape. *Id.* In Karakesisoglu's interview with detectives, she asked them whether this accusation would help her in getting sole custody. *Id.*

On September 20, 2016, Karakesisoglu engaged in consensual intercourse with Meza at Meza's home ("2016 Incident"). *Id.* ¶ 2. Video from the parking garage, from approximately one minute after the lobby video, shows them walking calmly together, and shows her leaning in to kiss him. *Id.* ¶ 3. The intercourse video from the night shows unambiguously consensual intercourse. *Id.* Furthermore, after the detectives discovered the video, Karakesisoglu stated it was her idea to have intercourse. *Id.* The following morning, Karakesisoglu got up and left early the next morning (she was at his house from approximately 3 a.m. to 5 a.m.), and proceeded to send Meza a series of "I love you, we should get back together" texts. *Id.* ¶ 4. Meza told Karakesisoglu that he didn't think they should see each other anymore. *Id.* She responded by going to Huntington Beach Police Department and accusing him of kidnap and forcible rape. *Id.*

On September 21, 2016, the police arrested Meza, and imaged both their phones. *Id.* ¶¶ 5, 18. Meza told the detectives that this was a lie to get leverage in the custody dispute, and that all they had to do is look in her phone. *Id.* ¶ 5. The detectives asked the girlfriend if they could look at her phone, where she really didn't want them to, and it took a lot of persuading. *Id.* She finally signed a consent, however, and one of the detectives opened it up and took a look. *Id.* One of the first things

---

[1] Except as otherwise indicated, the following factual background is derived from Meza's Complaint. Dkt. No. 1 ("Compl."). The Court includes these allegations only as background and makes no finding on whether they are true.

he found was a record of her Googling "kidnap" the day before this incident, and texting a cop friend to ask, "What would happen to Chris if he were convicted of rape? *Id.*

The case stretched on for five years, before a new Deputy District Attorney was assigned, who made a no-custody misdemeanor offer. *Id.* ¶ 8. On August 24, 2021, the new Deputy District Attorney dismissed everything (and stated "insufficient evidence" on the record—not a generic § 1385.) *Id.* Meza entered a *People v. West* plea to a single misdemeanor count of California Penal Code § 237, for pushing Karakesisoglu into the elevator. *Id.* In the plea agreement, Meza admitted that he "willfully and unlawfully and knowingly violated the personal liberty" of Karakesisoglu. Dkt. No. 37 at 3. The remaining counts were dismissed following Meza's guilty plea. *Id.*

### B. Procedural History

Meza filed suit in this Court on July 14, 2023. Compl. The Complaint alleges: (1) malicious prosecution; and (2) deliberate or reckless suppression of evidence in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. *See generally* Compl.

On January 6, 2026, Karakesisoglu filed the Motion for Leave, the MJOP, and the Anti-SLAPP Motion. Dkt. Nos. 58, 59. On January 20, 2026, Meza filed an Opposition to the Motion and a Request for Judicial Notice. Dkt. No. 62 ("Opposition"); RJN. On February 4, 2026, Karakesisoglu filed a Reply. Dkt. No. 66 ("Reply").[2]

On February 19, 2026, the Court held a hearing on the Motion for Leave, MJOP, Anti-SLAPP Motion, and RJN. At the hearing, the Court asked the parties to address the applicability of *Cote v. Henderson*, 267 Cal. Rptr. 274 (Cal. Ct. App. 1990) to this action, and permitted them to file supplemental briefing on it. The parties filed their supplemental briefs the following day. Dkt. Nos. 68 ("Meza Supp. Br."); 69 ("Karakesisoglu Supp. Br. ").

---

[2] As discussed at the hearing, Karakesisoglu's briefs were devoid of citations to case law, although there were numerous quotations which purported to be quotations from case law. Counsel is reminded of her obligations under Rule 11 of the Federal Rules of Civil Procedure to ensure that all "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Counsel is also reminded that the Court may impose an appropriate sanction on any attorney that violates Rule 11 or is responsible for a Rule 11 violation. Finally, counsel is reminded that the Local Rules of the Central District of California, C.D. Cal L.R. 7-5(a), as well as this Court's Civil Standing Order, Section VIII(D) also require that motions be supported with identified case law.

## REQUEST FOR JUDICIAL NOTICE (DKT. NO. 62-6)

### I. Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)).

### II. Discussion

In support of its Motion, Meza requests the Court judicially notice seven (7) documents. RJN at 1-3. Plaintiff did not file an Opposition to Defendant's request. The requests are listed below (with descriptions based on Meza's description of the documents):

1. Exhibit A - Plaintiff Christopher Meza's Complaint for Damages (Meza complaint) that was filed in Federal Court Central District on July 14, 2023 entitled, *Christopher Meza v. Daniel Quidort, Trent Tunstall, and Tara Karakesisoglu*, with a case number of 5:23-cv-01379 DDP (SHKx). A true and correct copy of the Meza complaint is attached hereto as Exhibit A.

2. Exhibit B - Defendant Tanya Karakesisoglu Supplemental Declaration that was executed on May 27, 2022 and filed in Orange County Superior Court Lamoreaux Justice Center located at 341 The City Drive South, Orange CA 92868, in the entitled

*Tanya Karakesisoglu v Christopher Meza*; Case Number 16P001264. A true and correct copy of the Supplemental Declaration is attached hereto as Exhibit B.

3. Exhibit C - The Certified Tianscript from the hearing that took place on August 24, 2021at the Superior Court of California Central Justice Center, Dept C-5 in the case entitled *The People of the State of California v. Christopher Allen Meza*, case number 16WF2194. A true and correct copy of the certified transcript is attached hereto as Exhibit C.

4. Exhibit D - The Emergency Protective Order that was filed in the case entitled *The People of the State of California v. Christopher Allen Meza*, case number 16WF2194. A true and correct copy of the Emergency Protective Order is attached hereto as Exhibit D.

5. Exhibit E - The motion for extension: Request for Extension of Time to Respond to Discovery and Obtain counsel that was filed in Federal Court Central District on November 11, 2025 entitled, *Christopher Meza v. Daniel Quidort, Trent Tunstall, and Tara Karakesisoglu*, with a case number of 5:23-cv-01379 DDP (SHKx). A true and correct copy of the Motion for Extension: Request for Extension of time to respond to Discovery and Obtain Counsel is attached hereto as Exhibit E.

6. All of the filings under the case number 5:23-CV-01379-MEMF (SHKx), in the case entitled, *Christopher Meza v. Daniel Quidort, Trent Tunstall, and Tara Karakesisoglu*.

7. All of the Filings under the case number 16WF2194 in the case entitled *The People of the State of California v. Christopher Allen Meza*.

*See* RJN. The documents and facts are public records, where their existence and contents (i.e., the fact that this document exists and that it contains the words it contains) cannot reasonably be disputed, and thus the Court will take judicial notice. Accordingly, the Court GRANTS Meza's Request for Judicial Notice as to all documents.

### III. Conclusion

Accordingly, the Court GRANTS Meza's Request for Judicial Notice as to all documents.

**MOTION FOR LEAVE TO FILE LATE ANTI-SLAPP MOTION (DKT. NO. 58)**

### I. Applicable Law

#### A. Section 425.16 Anti-SLAPP Special Motion to Strike

California's Anti-SLAPP statute allows a defendant to bring a special motion to strike a lawsuit brought primarily to chill the defendant's valid exercise of their First Amendment rights. Cal. Code Civ. Proc. §§ 425.16(a), (b)(1). This motion may be filed within sixty (60) days of the service of the complaint or later, "upon terms [the court] deems proper." *Id.* § 425.16(f). Once the notice of motion is filed, all discovery is stayed. *Id.* § 425.16(g).

A party may not file a late anti-SLAPP motion beyond the 60-day deadline unless the trial court has "affirmatively exercise[d] its discretion" to allow the late filing. *Platypus Wear, Inc. v. Goldberg*, 83 Cal. Rptr. 3d 95, 98 (Cal. Ct. App. 2008). A trial court has "considerable discretion" in determining whether to allow a late filing of an anti-SLAPP motion, but "must exercise this discretion consistent with the purposes of the statute and must be mindful that the 60-day deadline is the general rule." *Id.* at 107; *San Diegans for Open Gov't v. Har Constr., Inc.*, 192 Cal. Rptr. 3d 559, 569 (Cal. Ct. App. 2015).

The purpose of this statutory deadline is to provide a defendant with a procedural remedy allowing for "prompt exposure and dismissal of SLAPP suits." *Platypus Wear, Inc*, 83 Cal. Rptr. 3d at 104 (quoting *Morin v. Rosenthal*, 19 Cal. Rptr. 3d 149, 153 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Oct. 15, 2004)). By allowing the a defendant to "test the foundation of the plaintiff's action" at the outset of litigation, the defendant is saved from expending their "'time, energy, and resources'" fighting a baseless lawsuit. *Id.*

#### B. Relief Under Section 473(b)

California Code of Civil Procedure Section 473(b) provides that a court "may relieve a party . . . from a judgement, dismissal, order, or other proceeding taken against the party through the party's mistake, inadvertence, surprise, or excusable neglect." Cal. Civ. Proc. Code § 473(b).

The general purpose of this remedial statute is to "promote the determination of actions on their merits." *Austin v. Los Angeles Unified Sch. Dist.*, 198 Cal. Rptr. 3d 239, 248 (Cal. Ct. App. 2016). Therefore, the statute is construed liberally. *Olson v. Olson*, 306 P.2d 1036, 1039 (Cal. Ct. App. 1957). Courts may use their discretion to relieve a party of an "honestly made mistake, inadvertence, or excusable neglect" if it is in furtherance of justice. *Id.*

## II. Discussion

Karakesisoglu seeks leave from the Court to file a late anti-SLAPP motion. *See generally* Anti-SLAPP Motion. Karakesisoglu argues that her pro se status and personal circumstances justify the Court exercising its discretion to permit her late filing under Section 425.16(f). *Id.* at 4-5. In his Opposition, Meza asserts that Karakesisoglu has not demonstrated sufficient grounds for her untimely anti-SLAPP Motion. Opposition at 18-19. For the reasons set forth below, the Court GRANTS the Motion for Leave.

### A. The Court Will Exercise Its Discretion to Permit Karakesisoglu's Motion for Leave to File Late Anti-SLAPP Motion.

#### i. Granting Karakesisoglu's Late Filing Would Not Frustrate the Purpose of the Anti-SLAPP Statute.

Karakesisoglu argues that, based on the policy favoring a decision on the merits, the Court should permit her to file a late anti-SLAPP Motion. Motion for Leave at 5-6; Reply at 11-12. Meza maintains that Karakesisoglu's conduct throughout litigation does not support her request to file a late Anti-SLAPP Motion. Opposition at 18.

In determining whether to permit a late filing of an anti-SLAPP motion, the most important consideration for courts is whether the filing promotes the statute's purpose. *Har Construction, Inc.*, 192 Cal. Rptr. 3d at 569. Courts also consider the length of the delay, reasons for the delay, and any undue prejudice to the plaintiff. *Id.*

The 60-day filing deadline of anti-SLAPP motions have the primary purpose of preventing significant costs to the defendant—monetary or otherwise—by allowing the defendant to "test" the merits of a lawsuit early in the proceedings. *Platypus Wear, Inc*, 83 Cal. Rptr. 3d at 104 (quoting *Morin*, 19 Cal. Rptr. 3d at 153). When the defendant fails to meet that purpose, courts are more likely to deny a late filing. *Kunysz v. Sandler*, 53 Cal. Rptr. 3d 779, 781 (Cal. Ct. App. 2007), *as*

*modified* (Jan. 29, 2007) ("[T]he purpose of the anti-SLAPP statute is to dismiss [SLAPP lawsuits] at the earliest stage of the case . . . . That consideration, obviously, no longer applies once the complaint has been answered and the case has been pending for nearly a year."). However, should the defendant show "plausible excuse" for the delay, the court may grant the late filing. *Hoang v. Tran*, 274 Cal. Rptr. 3d 567, 579 (Cal. Ct. App. 2021).

Here, Karakesisoglu claims that her pro se status and personal circumstances—her marriage, the birth of her child, and relocation—constitute plausible excuse for her failure to timely file an anti-SLAPP Motion. Pro se status, alone, is insufficient to warrant a plausible excuse finding. *Backlund v. Stone*, 338 Cal. Rptr. 3d 251, 260 (Cal. Ct. App. 2025) (finding that ignorance of the law is no excuse where a litigant chose to proceed without counsel). And Karakesisoglu has not presented authorities supporting the proposition that voluntary personal acts—marriage, childbirth, and relocation—constitute plausible excuse, especially considering that this action was initiated over two years ago. *Hoang*, 274 Cal. Rptr. 3d at 579 (finding plausible excuse where a litigant reasonably believed an entity would represent him); *Platypus Wear, Inc.*, 83 Cal. Rptr. 3d at 105 (denying a motion to file a late anti-SLAPP motion where the complaint was filed *two years prior*). Although Karakesisoglu does not appear to have established plausible excuse, the Court, considering the policy favoring a decision on the merits, finds reason to exercise its discretion to permit Karakesisoglu to file a late anti-SLAPP motion.[3] *Platypus Wear, Inc*, 83 Cal. Rptr. 3d at 104.

Accordingly, the Court will exercise its discretion to permit Karakesisoglu to file a late Anti-SLAPP Motion.

### III. Conclusion

For the reasons stated, the Court GRANTS the Motion for Leave.

### MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 59)

### I. Applicable Law

---

[3] Karakesisoglu also argues that her pro se status and personal circumstances also constitute excusable neglect pursuant to Section 473(b). Cal. Code Civ. Proc. § 473(b); Motion at 5-7; Reply at 11-12. The Court does not find that Karakesisoglu demonstrated excusable neglect. But as discussed, the Court has discretion to permit a late anti-SLAPP motion and in light of the policy favoring a decision on the merits, *Platypus Wear, Inc*, 83 Cal. Rptr. 3d at 104, Section 473(b) does not bar Karakesisoglu from filing a late anti-SLAPP motion.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks omitted). A court must construe all factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A motion under Rule 12(c) is considered "functionally identical" to a motion under Rule 12(b)(6). *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The key difference between these two motions is just the timing of the filing: a 12(b)(6) motion is before pleadings have closed, and 12(c) motion is after. *See Dworkin*, 867 F.2d at 1192. Accordingly, judgment on the pleadings should be entered when a complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is factually plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If judgment on the pleadings is appropriate, a court may grant the non-moving party leave to amend, grant dismissal, or enter a judgment. Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## II. **Discussion**

Karakesisoglu moves for judgment on the pleadings as to Meza's malicious prosecution claim. Karakesisoglu requests that Meza's claim be dismissed on the basis that Meza cannot establish the requisite elements or, in the alternative, the MJOP should be stricken pursuant to

California's anti-SLAPP statute, Code of Civil Procedure § 425.16. *See generally* Motion. For the reasons set forth below, the Court GRANTS the MJOP.

### A.  Meza Does Not Properly Allege a Malicious Prosecution Claim.

"The elements of a cause of action for malicious prosecution are that: (1) the prior action was commenced by or at the direction of the defendant and was pursued to a legal termination in the plaintiff's favor; (2) it was brought without probable cause; and (3) was initiated with malice." *Cote*, 267 Cal. Rptr. at  277. "[T]he favorable termination which is essential to the plaintiff in a malicious prosecution action cannot be based on the dismissal of the criminal charges remaining after the defendant in a criminal proceeding has entered a plea of nolo contendere to one or more of the charges in the accusatory pleading pursuant to a plea bargain." *Id.* at 278.

One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. *Heck v. Humphrey*, 512 U.S. 477, 484-85 (1994) (quotations omitted). "This requirement 'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id.* (citing 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)). Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.*

### i.   Meza Cannot Demonstrate Favorable Termination.

The Complaint alleges that: (1) Karakesisoglu "intended to and did cause" Meza "to be arrested on suspicion of forcible rape, kidnapping to commit forcible rape, forcible oral copulation, criminal threats and kidnapping;" (2) Karakesisoglu did so in bad faith and without probable cause; (3) Meza was strip searched, threatened, and arrested as a result; and (4) the criminal proceedings ended in Meza's favor on his "charges of forceable rape, forcible oral copulation, kidnapping to commit forcible rape, criminal threats ,and kidnapping, were dismissed by the Orange County Superior Court." Compl. ¶¶ 26-33.

Karakesisoglu argues that Meza entered a guilty plea to false imprisonment arising from the same incident as the dismissed charges and thus, Meza cannot separate the guilty plea from the dismissed charges and Meza cannot demonstrate favorable termination. MJOP at 6-8; Reply at 3-4, 15-16. Meza, in opposition, contends that the Complaint details how Karakesisoglu knowingly provided false statements to law enforcement, and the record indicates that "no reasonable person would believe" Karakesisoglu's claims. Opposition at 10-11; Reply at 5.

Here, Meza pled guilty to false imprisonment in connection with the 2016 incident. And the remaining counts were dismissed. In the guilty plea, Meza admitted that he "willfully and unlawfully and knowingly violated the personal liberty" of Karakesisoglu. Dkt. No. 37 at 3. In *Cote*, the plaintiff was charged with sexual penetration by a foreign object by force, oral copulation, sodomy by force, forcible rape, false imprisonment, and sexual battery based upon a December 23, 1985, incident. 267 Cal. Rptr. at 276-77. The plaintiff entered a guilty plea on sexual battery, and the remaining counts were dismissed. *Id.* at 278. The *Cote* court found that "[t]he plea of nolo contendere is considered the same as a plea of guilty. Upon a plea of nolo contendere the court shall find the defendant guilty, and its legal effect is the same as a plea of guilty for all purposes." *Id.* As the plaintiff's counts stemmed from the same 1985 incident, the court concluded that the "dismissal of the remaining seven counts on the People's motion does not give rise to the requisite inference that the plaintiff was innocent of the charged offenses." *Id.* at 279. The dismissal of the remaining claims was procedural in nature, not a determination on the merits and therefore, the plaintiff could not establish the favorable termination element. *Id.*

Here, Meza pled guilty to false imprisonment in connection with the 2016 incident and the remaining counts were subsequently dismissed for "lack of sufficient evidence." MJOP at 6-8; Dkt. No. 62-8 at 15. As in *Cote*, the dismissal of the remaining counts was pursuant to a plea bargain—not a determination of Meza's innocence. In fact, at the change of plea hearing, Meza agreed to the factual basis underlying the charges which state that Meza "violated the personal liberty" of Karakesisoglu. Dkt. No. 62-8 at 14-15. As such, the dismissal did not derive from a favorable termination of Meza's charges. This holding is substantiated by *Cote*, where the court found that a district attorney's admission that it there would be "difficulty in proving the charges" "do not change

the nature of the dismissal" and do "not support an inference of innocence." *Cote*, 267 Cal. Rptr. 3d at 805. Therefore, the Court finds *Cote*'s ruling, that a guilty plea as to one of several claims involving the same incident does not demonstrate the favorable termination element, controls.

Although the Complaint asserts that "[n]othing in this cause of action is intended to address [Meza's] misdemeanor plea under [California] Penal Code § 237," Compl. ¶ 26, this is a conclusory statement that the Court need not accept as true. Because the plea derives from the same incident— the 2016 incident—allowing Meza to proceed with this malicious prosecution claim would constitute a collateral attack on the conviction through a civil suit—a procedural situation the *Heck* court disfavored. *Heck*, 512 U.S. at 485-85; Reply at 5.

In Meza's supplemental brief, he points to *Thompson v. Clark*, 596 U.S. 36 (2022) to argue that favorable termination "does not require plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." Meza Supp. Br. at 2. In *Thompson*, the Supreme Court held that plaintiff demonstrated favorable termination where the "prosecution moved to dismiss the charges" before trial without explaining the reason for dismissal. 596 U.S. at 40. Specifically, the Supreme Court held: "To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Thompson*, 596 U.S. at 39. *Thompson* did *not* involve a plea bargain; there the prosecution ended without a conviction. Here, the prosecution ended with a conviction—pursuant to Meza's plea.

Meza also cites to *Duarte v. City of Stockton*, 60 F.4th 566, 572 (9th Cir. 2023). Meza Supp. Br. at 2. There, the Ninth Circuit addressed favorable termination in the context of a *Heck* v. *Humphrey*, 512 U.S. 477 (1994) bar. *Duarte*, 60 F.4th at 571-72. Not only was the defendant in *Duarte* never convicted in connection with the prosecution at issue—unlike Meza—*Duarte* did not address favorable termination in the context of a malicious prosecution claim.

Having found that Meza cannot demonstrate favorable termination—a required element of a malicious prosecution claim—the Court need not address probable cause.

Taken together, the Court concludes that the Complaint does not sufficiently set forth a malicious prosecution claim. Meza's malicious prosecution claim is dismissed with prejudice on this

basis as the Court finds that future amendment would be futile given Meza's guilty plea and *Cote*'s holding.[4] *Carrico*, 656 F.3d at 1008.

Having dismissed the malicious prosecution claim with prejudice, the Court need not reach the Anti-SLAPP Motion, which was explicitly brought in the alternative. But because Karakesisoglu appears to be seeking attorney's fees and costs, the Court will address the Anti-SLAPP Motion.

### B. The Anti-SLAPP Statute Does Not Bar Meza's Malicious Prosecution Claim.

Karakesisoglu argues that the statute applies, and as a result, the malicious prosecution claim should be stricken. Anti-SLAPP Motion at 11; Reply at 6-8; Dkt. No. 69 at 2. Meza maintains that the anti-SLAPP statute does not protect against false statements. Opposition at 13.

The anti-SLAPP statute states:

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

[An] act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Code Proc. §§ 425.16(b)(1), (e).

"A court evaluates an anti-SLAPP motion in two steps. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" *Wilson v. Cable News Net., Inc.*, 444 P.3d 706,

---

[4] Meza states that he is "entitled to discovery in this act [] if the Court is going to treat" the MJOP as a factual challenge. Opposition at 11. Discovery, however, will not alter the substance contained in Meza's guilty plea, which the Court relies on in this Order.

713 (Cal. 2019) (citing *Park v. Bd. of Trs. of Cal. State Univ.*, 393 P.3d 905, 907 (Cal. 2017)). !"If the plaintiff fails to meet that burden, the court will strike the claim. Subject to certain exceptions not relevant here, a defendant that prevails on a special motion to strike is entitled to attorney fees and costs." *Id.*; Cal. Civ. Code Proc. § 425.16(c).

Here, the malicious prosecution claim does not arise from protected activity. The allegations arise from statements by Karakesisoglu to law enforcement related to the development of a police report concerning her accusations against Meza of kidnaping and forcible rape. Compl. ¶¶ 6-7, 18; Opposition at 13-14. Such statements would normally be considered protected activity. *Comstock v. Aber*, 151 Cal. Rptr. 3d 589, 599 (Cal. Ct. App. 2012) ("Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute."). However, the Complaint alleges that Karakesisoglu's statements were false statements designed to ruin Meza's life. Compl. ¶¶ 18, 20, 32, 37. False reports and statements are *not* protected speech. *See* Cal. Code Civ. Proc. § 47(b)(5) ("This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report."); *Lefebvre v. Lefebvre*, 131 Cal. Rptr. 3d 171, 175 (Cal. Ct. App. 2022) (holding that "making a false police report was not an act in furtherance of [Karakesisoglu's] constitutional right of petitioner or free speech . . . . [T]he anti-SLAPP statute never comes into play in this case."). Therefore, the Court holds that the statements at issue with regard to Meza's malicious prosecution claim, if taken as true, do not come within the ambit of the anti-SLAPP statute and are not privileged communications. Reply at 10. Accordingly, Karakesisoglu has not met her burden, and the Court need not address the second prong.

Accordingly, the anti-SLAPP statute does not apply at this stage, Meza's Complaint shall not be stricken on this basis, and Karakesisoglu is not entitled to attorney's fees or costs.

### III.  Conclusion

For the foregoing reasons, the Court Orders as follows:

    1.  The Motion for Leave (Dkt. No. 58) is GRANTED;

    2.  The MJOP (Dkt. No. 59) is GRANTED;

        a.  Meza's malicious prosecution claim is DISMISSED WITH PREJUDICE;

b.  Karakesisoglu's Anti-SLAPP Motion is DENIED, as is her request for attorney's fees and costs;

3.  The Request for Judicial Notice (Dkt. No. 62-6) is GRANTED;

4.  Karakesisoglu's Motion to Stay Discovery (Dkt. No. 72) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: March 3, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge